NEWTON S. FINNEY, plaintiff in error, *vs.* JOHN L. CAD-WALLADER, trustee, defendant in error.

55   75
86  729
88  312
55   75
123  203

1. If a parol contract embrace many particulars on either side, and there be part performance on both sides, when one party seeks by action at law to take the fruits of his own part performance, the other party may·recoup his damages for any breach by the plaintiff of other stipulations in the same general contract.

2. In assessing the damages, care should be taken that they be not speculative or too remote. Damages claimed for not making the defendant agent of a line of schooners never established, and for not making him general manager of a bank never created or opened, are too uncertain and remote. But proximate damages which he sustained by the plaintiff's failure to pay storage according to contract, and to furnish a given amount of patronage in certain years to the defendant's wharf and lumber shed, at a fixed rate, and by being excluded, in violation of the contract, from the use of the wharf when he could have made it profitable to himself by receiving thereat certain specified cargoes which were consigned to him, may be recouped, if clearly and definitely proved.

3. On general demurrer to a plea or motion to strike the same, if any part of the plea be good in substance, the demurrer or motion should be overruled, but the court may, and ought to, direct looseness and uncertainty to be cured by amendment; and·if the defendant refuse to amend in that respect, the plea should then be stricken as if standing upon special demurrer.

Recoupment. Damages. Pleadings. Demurrer. Amendment. Practice in the Superior Court. Before Judge HARRIS. Glynn Superior Court. November Term, 1874.

Cadwallader, as trustee in bankruptcy of Dodge & Company, instituted proceedings to foreclose a mortgage executed by Finney, to secure the payment of a promissory note made by N. S. Finney & Company, dated June 1st, 1870, payable two years after date, to the order of Dodge & Company, for

$4,000 00, bearing interest at seven per cent., upon which was a credit of $1,089 32. To the rule *nisi* Finney pleaded as follows :

At the time of the commencement of this suit Dodge & Company were indebted to him in the sum of $9,930 00, on account of their failure to comply with certain agreements entered into by them, which constituted the inducement to defendant to accept the loan of $4,000 00, secured by the mortgage aforesaid. The contract out of which such undertakings arose, was, in substance, as follows :

Finney was to erect the two-and-a-half story building described in said mortgage, in which Dodge & Company were to have two rooms as offices, free of rent for two years, or until said note for $4,000 00 was paid. He was to entirely withdraw from the business of buying and shipping yellow pine lumber, in which he was then engaged ; to give them the benefit of the good will of his business and the exclusive right to pass lumber over his wharf and mill-shed.

In consideration of which Dodge & Company agreed to make him the loan on said note, secured by said mortgage.

Also, to establish a line of schooners between New York and Brunswick, Georgia, for the transportation of freights, to advertise the line at both ends of the route; and to make said Finney, or such firm as he might organize, sole agent of the same at Brunswick, with the right to the usual commissions etc., on the business done.

Also, to ship over his wharf and mill-shed, during the first year of their business, not less than eight million feet of lumber, and during each subsequent year not less than ten million feet, on which he was to be paid twenty-five cents per thousand feet, to be credited on said note and mortgage. Should said Dodge & Company desire to store lumber in said mill-shed, they were to pay the same storage as was charged in Savannah, also to be credited as above indicated. But said wharf and mill-shed were to be kept unobstructed by lumber when said Dodge & Company had no vessels in port.

Also, to establish a bank in said building, and to make defendant the business manager thereof.

Dodge & Company failed to establish the line of schooners, as promised, whereby he was damaged during the two years they did business in Brunswick, from May 23d, 1870, to May, 1872, $1,200 00.    They failed, also, to comply with their undertaking as to the amount of lumber which they were to pass over his wharf and mill-shed, shipping only two million two hundred and fifty thousand feet each year, whereby he was damaged $3,500 00.   They failed, also, to pay for the storage on their lumber, damaging him on that account $1,130 00. They failed to comply with their agreement to keep the wharf unobstructed with lumber when they had no vessels in port, and thus prevented him from receiving five cargoes of railroad iron which were consigned to him, the storage, wharfage and commissions upon which would have netted him $1,100 00, whereby he was damaged the amount aforesaid.    They failed to comply with their agreement to establish a bank, and to make him the business manager thereof, in expectation of which he had gone to the expense of fitting up a portion of his said building for the banking business, by reason of which he was damaged $3,000 00.    From these causes he has been damaged in all $9,930 00.

He would not have borrowed the $4,000 00, secured by the mortgage aforesaid from said Dodge & Company, had it not been for these various undertakings on their part.    All of the obligations assumed by him were, in good faith, executed.    From the amount of the damages sustained by him, he is willing to allow the plaintiff the sum claimed.

To this plea the plaintiff demurred upon the following grounds :

1st. Because it sought to set up parol agreements to vary the terms of a valid written instrument.

2d. Because the agreements set forth by said plea were in parol, and not to be fully performed within one year, and were consequently void under the statute of frauds.

3d. Because recoupment was not a proper plea upon said facts.

The demurrer was sustained and defendant excepted.

The jury returned a verdict for the amount claimed. Error is assigned upon the above ground of exception.

GOODYEAR & HARRIS, by brief, for plaintiff in error.

T. E. DAVENPORT, by N. J. HAMMOND, for defendant.

BLECKLEY, Judge.

1. If part of a contract only is reduced to writing (such as a note given in pursuance of a contract,) and it is manifest that the writing was not intended to speak the whole contract, then parol evidence is admissible: Code, sections 2757, 3803. The consideration of a contract is always open to inquiry as between the original parties: 28 *Georgia Reports,* 165; 6 *Ibid.,* 166. Even the consideration of a deed may be inquired into when the principles of justice require it: Code, section 2690. If the consideration, apparently good or valuable, fails either wholly or in part before the promise is executed, such failure may be pleaded in defense to the promise: Code, sections 2748, 2857, 3471. Recoupment is a right of the defendant to have a deduction from the amount of the plaintiff's damages for the reason that the plaintiff has not complied with the cross-obligations or independent covenants arising under the same contract: Code, section 2909. It may be pleaded in all actions *ex contractu,* where, from any reason, the plaintiff, under the same contract, is in good conscience liable to the defendant: Code, section 2912. See a discussion of the principle of recoupment in 7 American Law Review, 389. Recoupment looks through the whole contract, treating it as an entirety, and regarding the things done and stipulated to be done on each side as the consideration of the things done and stipulated to be done on the other; and when a plaintiff seeks redress for the breach of the stipulations in his favor, it sums up the grievances on each side, strikes a balance, and gives him a

Finney *vs.* Cadwallader.

judgment for only such difference as may be found in his favor: 30 *Georgia Reports*, 482; *Ibid.*, 413; 45 *Ibid.*, 474; 48 *Ibid.*, 128. The proceeding, under the statute, for foreclosure of mortgage by petition and rule *nisi*, is open to all defenses applicable to an ordinary action on the secured debt: 27 *Georgia Reports*, 248; 30 *Ibid.*, 413, *supra*.

Contracts required by section 1950 of the Code to be in writing, are nevertheless good by the terms of the next section, if there has been performance on one side accepted by the other, or if there has been such part performance as would render it a fraud in the party refusing to comply if the court did not compel performance. Tested by the foregoing legal principles, there is no doubt that the defense of recoupment can be entertained in the present case, and that it ought to prevail to the extent of any damages that would be recoverable by the mortagagor against the mortagees in an original action by the former against the latter for the breaches of contract alleged in the plea. According to the plea the note and mortgage were but parts of an extensive contract between the parties, embracing many particulars. The note and mortgage were created in part execution of that general contract, and represented certain of its stipulations only. Other stipulations of the same general contract were obligatory upon the mortgagees, some of which were performed and some violated, and from such violation damages are alleged to have resulted to the mortgagor. The plea alleges performance on the part of the latter of all stipulations casting any obligation upon him, except only that of paying the mortgage debt. The object of this suit is to compel him to perform that; and he urges, as a defense, his counter-claim for damages.

2. The stipulations of the respective parties may be condensed as follows: On the part of the mortgagor, to erect a building and allow the use of two rooms therein, free of rent, for two years; to withdraw from the lumber business; to yield the exclusive right to pass lumber over his wharf and mill-shed; to divert the good-will of his lumber business to the mortgagees; to give the note and mortgage, and to dis-

charge them by payment.    On the part of the mortgagees, to make the loan on the agreed security; to establish a line of schooners, advertise the same, and make the mortgagor sole agent thereof at Brunswick, with certain rights as to freights, commissions, wharfage fees and storage fees; to ship over his wharf and mill-shed so much lumber the first year, and so much each succeeding year, paying wharfage thereon at an agreed rate; to pay storage, at Savannah rates, on lumber stored with the mortgagor; to keep the wharf and shed unobstructed with lumber, and allow the mortgagor the use thereof when no vessels of the mortgagees were in port; to establish a bank and make this mortgagor the business manager thereof.

It does not appear from the plea that either the schooner line or the bank was ever established.    That being so, the damages from not making the mortgagor agent for the one and manager of the other, are too remote and uncertain. Whether, if the two institutions had gone into effect, and he had been excluded from the agency and management, his damages resulting from such exclusion would, under the contract, have been sufficiently certain and proximate, need not be discussed.    Neither is it necessary to consider, on the facts as they stand, what may be, or may have been, his right in respect to rescinding the contract for failure to establish the bank and the line of schooners : 29 *Georgia*, 461.    The other three stipulations alleged to have been broken by the mortgagees, are within the ordinary rule of damages.    If lumber was stored, and the storage was to be paid for at Savannah rates, those rates are doubtless ascertainable.    If there was a failure, during the first and second years, as alleged, to ship the agreed quantity of lumber over the mortgagor's wharf, at the agreed wharfage of twenty-five cents per thousand ; that item is susceptible of calculation; and if, by reason of unwarranted obstruction, the mortgagor was excluded from his wharf when he was entitled to use it, and when its use would have been of value to him, his loss admits of legal estimation, more especially as the plea specifies the number and character of

cargoes which, being consigned to him, he was prevented from receiving. Not only are these three items matter for recoupment under the sections of the Code above cited, but under other sections, (2900, 3261,) they are of a nature to be available as set-off, proper, if so pleaded : See.*Ingram vs. Jordan*, decided at this term.

3. The plea, treated as a plea of recoupment, (which it purports to be,) though amenable to none of the objections set out in the demurrer, is not free from grave defects. It presents bad matter blended with good; and it is wanting in fullness and precision, lengthy as it is. But a part of it is good in substance; and that, despite its vagueness, should protect it against the force of a general demurrer or of a motion to dismiss, until after warning has been given to amend. We hold that the superior court may, and ought, on simple motion, to exact the correction of great looseness and uncertainty in pleading, and that refusal by counsel to make a reasonable and proper amendment in aid of due certainty, would warrant the court in striking a plea as if standing on special demurrer : Code, section 3459.

Judgment reversed.